# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **ROBERT STRATTON**, | |
| Plaintiff, | CIVIL ACTION FILE NO.: |
| vs. | |
| **ULMA FORM-WORKS, INC.** | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT FOR DAMAGES

Plaintiff Robert Stratton files this complaint against Defendant ULMA Form-Works, Inc. ("ULMA" or "Defendant") showing the Court as follows:

## INTRODUCTION

1.

Plaintiff Stratton was a high performing 3.5-year employee, who had been hired originally as warehouse personnel, but been promoted into the role of account manager and given substantial sales responsibilities and territories. As proof of his good performance and good standing with the Company, ULMA had Mr. Stratton sign revised employment paperwork on December 30, 2019, which set his sales commission at $1.3 million in gross sales for the year. In February and March 2020, Mr. Stratton was working and performing his essential job functions, and was one

1

of the lead managers working on a nearly $1,000,000 sale that would have predominantly satisfied his $1.3M sales quota for the year.

However, also in February and March 2020, Plaintiff Stratton was suffering from a serious medical condition dating back to early 2019 (colon abscess and diverticulitis) that became aggravated and resulted in peritonitis (usually caused by intestinal infection) and a fistula (abnormal connection between two body parts) in his intestine.

This condition led to an emergency room visit on March 5, 2020, and while ULMA knew that Mr. Stratton was in need of FMLA leave, ULMA did not inform Mr. Stratton of his FMLA rights and instead told him to use his sick leave time. Mr. Stratton informed ULMA he would need leave to have intestinal surgery, and then on March 23, 2020, Mr. Stratton informed ULMA that his fever had returned (likely from another intestinal infection) and that he needed to "see [his doctor] pretty quick, likely need another round of antibiotics."

On March 26, 2020, Defendant, without warning, fired Mr. Stratton because of his disability and/or because of his request for accommodation and/or because of his request for FMLA leave. Defendant's pretextual reason was that Mr. Stratton was performing poorly; this was false because his sales quota numbers were comparable (if not about to exceed, see above) his similarly situated peers. This action is brought pursuant to the Americans with Disabilities Act ("ADA"), 42

U.S.C.A. § 12101, *et seq.* and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*

## THE PARTIES

2.

Plaintiff Stratton is a former sales employee of Defendant that always received positive evaluations during his employment. He is a citizen of the State of Alabama, and traveled to the company's metro Atlanta headquarters often.

3.

Defendant ULMA Form Works, Inc. ("ULMA") construction company based in Dacula, Georgia performing large scale concrete form work in commercial buildings, high rise buildings, industrial power plants and water/sewer treatment plans. ULMA may be served via its registered agent, Corporation Service Company, 2 Sun Court Suite 400, Peachtree Corners, GA 30092.

## JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and 28 U.S.C. § 1331 because this case arises under the ADA and FMLA.

5.

Venue is proper in this court under 28 U.S.C. § 1391 because Defendant ULMA is located in this judicial district and the events giving rise to the claims herein arose in this judicial district.

6.

This Court has personal jurisdiction over Defendant ULMA because it has offices and other locations in this district and transacts significant business in this District.

7.

All conditions precedent to the institution of this suit have been fulfilled. On July 28, 2020, Plaintiff Stratton timely filed charges with the Equal Employment Opportunity Commission, Charge No. 410-2020-07257. The Notice of Right to Sue was dated February 17, 2021 and received by Plaintiff from the EEOC via email on March 1, 2021.  This action has been filed within ninety days of receipt of said Notice.

## **FACTUAL ALLEGATIONS**

8.

After being hired as a warehouse supervisor in 2016, Mr. Stratton performed well and was promoted by ULMA into a sales position in 2018.  In

early 2019, he took a new sales position that required him to commute biweekly via car to/from the Mobile, Alabama area to Atlanta, Georgia.

9.

Later in approximately October 2019, Mr. Stratton was again promoted into a new sales position with new sales responsibilities and territories. This new position required him to commute biweekly via air to/from the Mobile, Alabama area to Charlotte, N.C.

10.

In addition to the frequent commutes, Mr. Stratton was working 40-60 hours a week and this work sometimes required additional travel (usually via car) to customer sites.

11.

During this time in 2019 and early 2020, Mr. Stratton performed his job well, met or substantially met his quota expectations and had sales numbers in at least the top one half of his sales peers.

12.

In January 2019, Mr. Stratton was hospitalized with abdominal pain. He was eventually diagnosed with a medical condition that resulted in diverticulitis,

bleeding and pain in his sigmoid colon. The condition caused prolonged and repeated intestinal inflammation and severe abdominal pain, body aches, fever and diarrhea. The inflammation from diverticulitis caused scar tissue formation and breakdown of the colon wall, and the colon wall developed a hole, and then an abscess formed.

13.

The dangerous abscess resulted in a repeat hospitalization in February 2019. Thereafter, the condition required continued medical treatment, continued use of antibiotics and other medications, and eventual surgery to remove portions of his sigmoid colon. Mr. Stratton was told this is an ongoing, lifelong condition. During this time in 2019, Defendant's Regional Sales Manager Sam Saeed was unhappy about Mr. Stratton's medical absences from work, and told Plaintiff that he should "go to the hospital on your own time."

14.

The ongoing condition was also subject to aggravation/worsening, particularly during periods where Mr. Stratton was required to sit for long periods of time. In February 2020, during a prolonged trip to/from Charlotte requiring much sitting, Mr. Stratton suffered a severe aggravation as a result of this work-

related travel.  He was in severe pain, prolonged and repeated intestinal inflammation and severe abdominal pain, body aches, fever and diarrhea.

15.

Mr. Stratton informed his Sam Saeed in February 2020 that due to the worsened colon condition, and the need to take some time off, and may need an accommodation of limiting travelling while sick, especially if that travel would require long periods of sitting.  Saeed was again unhappy with the prospect of Plaintiff missing time/travel to treat a medical condition.

16.

However, despite taking some limited time off and limiting travel, Mr. Stratton continued to work and perform his essential job functions.  At the time (Feb. – March 2020), he was working on large sale proposal for a nearly $1,000,000 retail sale through HD Supply/White Cap out of Los Angeles for Project Rosarito in Malibu, California.  Mr. Stratton continued to engage in other sales related activities, and in fact was able to secure bids for two of the biggest concrete contractors in the country, Baker Concrete and Lithko, working on the biggest commercial structures in Charlotte.  Mr. Stratton's sales numbers and activities were right on target with where he should have been for early in the year, and comparable (if not better) to other similarly situated sales people.

17.

Mr. Stratton's medical condition worsened, and on March 5, 2020, he was in such severe pain and had to be admitted to his local emergency room. He was eventually diagnosed with peritonitis (usually caused by intestinal infection), a fistula (abnormal connection between two body parts) in his intestine and an inflamed sigmoid colon. During this time period, he suffered headache, nausea, abdominal pain, fatigue, constipation and/or diarrhea. Late in the day on March 5, 2020, Mr. Stratton emailed his supervisor Sam Saeed various medical records from his emergency room visit, and informed Mr. Saeed that he would need to have a medical procedure "and then surgery." Mr. Saeed did not reply to this email.

18.

In the subsequent weeks, Mr. Stratton kept in regular contact with ULMA's Human Resources department in order to advise them of coming medical appointments and need for future leave. However, even though Mr. Stratton was eligible for FMLA leave, ULMA did not inform Mr. Stratton of his FMLA rights. On the contrary, on March 18, 2020, Mr. Stratton was instructed to take sick leave for the doctors' visits he was attending, even though such doctor's visits should have been covered by FMLA leave.

19.

Also, on March 18, 2020 ULMA sent Mr. Stratton "the necessary forms and information regarding any short-term disability you might take," but still did not inform Mr. Stratton of his rights under or eligibility for FMLA leave.  On March 19, 2020, ULMA sent Mr. Stratton an FMLA form for his doctor to complete, but again was not apprised of his rights to take FMLA leave (for February lost time or current lost time or future lost time) by ULMA's Human Resources department.

20.

Also on March 18, 2020, after 5:49 p.m., Regional Manager Saeed sent Mr. Stratton a series of emails complaining about a proposal that Mr. Stratton had prepared.  Mr. Saeed complaints were pretextual – for example, complaining that the proposal had a 1.5% rental rate, even though Saeed himself had approved the 1.5% rate for this customer earlier.  Saeed also wrote " What is your status now? Last communication you reported sick, right?" Plaintiff Stratton confirmed that he was sick, but that "My antibiotics have reduced some of the pain so I began responding to direct requests from customers."

21.

During this time, the Coronavirus pandemic had caused many areas and employers to have their employees go into quarantine.  This included ULMA,

9

which informed all ULMA employees (including those similarly situated to Mr. Stratton) that they could work remotely beginning on or about March 19, 2020 and travel was limited. So Mr. Stratton continued to work from home (like his similarly situated ULMA sales employees) and continued to limit his travel, much like his similarly situated co-workers.

22.

On March 23, 2020, Mr. Stratton informed ULMA that his fever had returned (likely from another intestinal infection) and that he needed to "see [his doctor] pretty quick, likely need another round of antibiotics."

23.

On March 26, 2020, at 10:27 a.m., Mr. Stratton informed ULMA that his doctor "should see me tomorrow 3/27 and fill out my FMLA paperwork…Pain in my intestines remains constant but new antibiotics should help until surgery."

24.

Later on March 26, 2020, at 11:16 a.m., ULMA terminated Mr. Stratton's employment at Saeed's request/initiative. ULMA sent Mr. Stratton a letter explaining the termination was for the pretextual reason of unexplained performance deficiencies. At the time of his termination, Plaintiff Stratton had FMLA leave available.

## COUNT ONE: ADA RETALIATION

25.

Plaintiff Stratton incorporates herein by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

26.

At all times relevant hereto, Plaintiff Stratton had a disability and/or was regarded as disabled by Defendant. 29 C.F.R. § 1630.2(g).

27.

At all times relevant hereto, Plaintiff Stratton had or was regarded as having a condition that limits major life activities, including, but not limited to, sleeping, sitting, bending, lifting, and working pursuant to 42 U.S.C. § 12102(2)(A) and 29 CFR § 1630.2(i)(1)(i), and which limits the operating of major bodily functions, such as the digestive and bowel functions.

28.

Plaintiff Stratton was at all relevant times qualified for his position and able to perform all of the essential functions of this position with or without a reasonable accommodation(s).

29.

Plaintiff Stratton engaged in protected activity in February and March 2020 when he requested the reasonable accommodations of leave, including future leave for surgery, and to limit his travel while sick.

30.

Defendant then took an adverse employment action against Plaintiff Stratton by terminating him within a short temporal proximity of these requests.

31.

Defendant took the adverse employment action because of Plaintiff Stratton's protected activity; ULMA it did not want to endure the inconvenience of Plaintiff's accommodation requests.

32.

Plaintiff Stratton suffered damages because of the adverse employment action. As a direct result of Defendant ULMA's retaliation, Plaintiff Stratton has suffered and continues to suffer damages from those wrongful acts and is entitled to the relief sought in the prayer for relief.

## COUNT TWO: ADA DISCRIMINATORY DISCHARGE

33.

Plaintiff Stratton incorporates herein by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

34.

At all times relevant hereto, Plaintiff Stratton had a disability or was regarded as disabled by Defendant ULMA. 29 C.F.R. § 1630.2(g).

35.

At all times relevant herein, Plaintiff Stratton had or was regarded as having a condition that limits major life activities, including, but not limited to, sleeping, lifting, sitting, bending, and working, pursuant to 42 U.S.C. § 12102(2)(A) and 29 CFR § 1630.2(i)(1)(i), and which limits the operating of major bodily functions, such as the digestive and bowel functions.

36.

Plaintiff Stratton was at all relevant times qualified for his position and able to perform all of the essential functions of this position with or without a reasonable accommodation.

37.

Defendant terminated Plaintiff Stratton because of his disability and/or because it regarded him as disabled.

38.

As a direct result of Defendant's termination of Plaintiff Stratton, Plaintiff Stratton has suffered and continues to suffer damages from that wrongful act and is entitled to the relief sought in the prayer for relief.

## COUNT THREE:
## INTERFERENCE WITH FMLA RIGHTS

39.

Plaintiff Stratton incorporates herein by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

40.

At all times material hereto, Defendant ULMA has been an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

41.

At all times material hereto, Plaintiff Stratton was an "eligible employee" of Defendant ULMA within the meaning of the FMLA, 29 U.S.C. § 2611(2).

42.

Plaintiff Stratton was entitled to FMLA leave "[b]ecause of a serious health condition."

43.

Plaintiff Stratton's serious health condition met the criteria of 29 CFR § 825.115.

44.

Defendant ULMA interfered with Plaintiff Stratton's FMLA rights by, at least, failing to inform Plaintiff Stratton of his eligibility for FMLA leave, by using his need for leave as a negative factor in evaluating his employment, by restraining and/or denying the exercise of, or the attempt to exercise, the rights provided by the FMLA, including the right to reinstatement.  ULMA failed to authorize FMLA leave, and terminated Plaintiff to prevent him from exercising his FLMA rights.

45.

Plaintiff Stratton was denied benefits to which he was entitled under the FMLA, including both taking leave and being reinstated following a leave period.

46.

Plaintiff Stratton has been prejudiced by the FMLA violation. Plaintiff Stratton suffered a harm remediable by either damages or equitable relief. Specifically, Plaintiff Stratton was damaged through loss of wages, salary, employment benefits, or other compensation denied to Plaintiff Stratton by reason of the violation.

47.

Plaintiff Stratton has suffered and continues to suffer damages as a direct and proximate result of Defendant ULMA's interference with his exercise of rights under the FMLA.

48.

Plaintiff Stratton is entitled to recover from Defendant ULMA for at least the wages and employment benefits he has lost as a result of Defendant ULMA's unlawful conduct in violation of the FMLA, and interest thereon, calculated at the prevailing rate.

49.

Plaintiff Stratton is entitled to recover liquidated damages from Defendant ULMA in addition to the compensation alleged above in accordance with 29 U.S.C. § 2617(1).

## COUNT FOUR:
## FMLA RETALIATION

50.

Plaintiff Stratton incorporates herein by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

51.

At all times material hereto, Defendant ULMA has been an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

52.

At all times material hereto, Plaintiff Stratton was an "eligible employee" of Defendant ULMA within the meaning of the FMLA, 29 U.S.C. § 2611(2).

53.

Plaintiff Stratton was entitled to FMLA leave "[b]ecause of a serious health condition."

54.

Plaintiff Stratton's serious health condition met the criteria of 29 CFR § 825.115.

55.

Plaintiff Stratton engaged in protected conduct under the FMLA.

56.

Plaintiff was terminated in retaliation by Defendant for seeking and/or being eligible for FMLA leave and/or pursuing other rights under the FMLA.

57.

Plaintiff Stratton has suffered and continues to suffer damages as a direct and proximate result of Defendant ULMA's retaliation.

58.

Plaintiff Stratton is entitled to recover from Defendant ULMA for at least the wages and employment benefits he has lost as a result of Defendant ULMA's unlawful conduct in violation of the FMLA, and interest thereon, calculated at the prevailing rate.

59.

Plaintiff Stratton is entitled to recover liquidated damages from Defendant ULMA in addition to the compensation alleged above in accordance with 29 U.S.C. § 2617(1).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Stratton respectfully prays this Court grant the following relief:

a.      That Plaintiff Stratton have and recover from Defendant ULMA lost back pay and benefits, with prejudgment interest thereon;

b.      That the Court award front pay and benefits in an amount sufficient to compensate him for the loss of future salary and fringe benefits;

c.      That Plaintiff Stratton have and recover compensatory damages in an amount to be determined by a jury;

d.      That Plaintiff Stratton have and recover punitive damages in an amount to be determined by a jury;

e.      That Plaintiff Stratton recover liquidated damages from Defendant ULMA in accordance with 29 U.S.C. § 2617(1);

f. That Plaintiff Stratton recover his attorneys' fees and costs of litigation pursuant to all applicable federal laws; and

g. Any and other such further relief this Court or the Finder of Fact deems equitable and just.

**Plaintiff Stratton demands a trial by jury.**

Respectfully submitted, this 28th day of April, 2021.

/s/ Douglas Kertscher
Douglas R. Kertscher
Georgia Bar No. 416265
Jennifer L. Calvert
Georgia Bar No. 587191
*Attorneys for Plaintiff*

Hill, Kertscher & Wharton, LLP
3625 Cumberland Blvd., SE, Suite 1050
One Overton Park
Atlanta, Georgia 30339
404-953-0995 (ph.)
404-953-1358 (fax)
drk@hkw-law.com
jc@hkw-law.com